BRYAN SCHRODER
United States Attorney

YUNAH CHUNG
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-4201
Fax: (907) 271-1500
Email: Yunah.Chung@usdoj.gov

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:20-cr-00033-TMB-DMS |
| Plaintiff, | ) | |
| vs. | ) | |
| MAURICE YOUNG, | ) | |
| Defendant. | ) | |

### UNITED STATES' SENTENCING MEMORANDUM

### SUMMARY OF SENTENCING RECOMMENDATIONS

**INCARCERATION** ................................................................................................... 3 months

**SUPERVISED RELEASE** ..................................................................................................... N/A

**PROBATION** ....................................................................................................................... 3 years

**SPECIAL ASSESSMENT** ............................................................................................... $25.00

**RESTITUTION AND FINE** ................................................................................................ N/A

Defendant Maurice Young ("Young") pled guilty to the charge of Assault Within Special Maritime and Territorial Jurisdiction in violation of 18 U.S.C. §§ 7(1) and 113(a)(4), a Class A misdemeanor. (Dkt. No. 21.) There is no plea agreement in this case. The United States recommends that the Court sentence Young to 3 months of incarceration, a sentence at the lower end of the advisory guideline range of 2 to 8 months, followed by 3 years of probation, and a $25 special assessment.

I.  **BACKGROUND**[1]

Young was a housekeeper and galley assistant aboard the fishing vessel SeaFreeze America on March 22, 2020. (Dkt. No. 26 (Revised Presentence Investigation Report), ¶ 4.) SeaFreeze America was underway at the time and located approximately 120 nautical miles east of Saint George Island in the Bering Sea. (*Id.*)

D.C., the victim, was a processor on SeaFreeze America. (*Id.*, ¶ 5.) While Young served food to D.C., D.C. commented that Young should be wearing gloves given the pandemic. (*Id.*) A hostile exchange of words ensued between D.C. and Young, and another employee prepared D.C.'s plate to avoid further conflict. (*Id.*)

The next day, D.C. went to the galley for his meal, and Young prepared D.C.'s plate with no issues. (*Id.*, ¶ 6.) After the meal, as D.C. walked up the stairs, Young approached him and challenged him to a fight. (*Id.*) D.C. declined. (*Id.*) One witness reported that D.C. had teased Young and that Young told the witness that this may be his

---

[1] The facts set forth herein are a summary of facts previously provided in the revised presentence investigation report and the case docket.

U.S. v. Young
3:20-cr-00033-TMB-DMS

2

last day at work because Young was going to "kick his ass," referring to D.C. (*Id.*, ¶ 8.)

Later that day, D.C. returned to the galley for his meal. (*Id.*, ¶ 7.) While D.C. was sitting at a table, Young approached him from behind and punched him in the face. (*Id.*) A bystander pulled Young off of D.C. before Young could throw another punch. (*Id.*, ¶ 10.) D.C. was taken off the vessel to Dutch Harbor, and then flown to Anchorage, Alaska for hospitalization and surgery. (*Id.*, ¶ 7.) D.C. suffered two lacerations above one eye and a broken orbital bone (*Id.*; see Exh. 1 (sealed).)

After the attack, Young claimed that D.C. harassed and threatened him, and was a "bully" who he had seen "beat up" other people. (Dkt. No. 26, ¶9.)

## II. SENTENCING GUIDELINE APPLICATIONS

### A. <u>Offense Level</u>

#### 1. **Base Offense Level and Applicable Specific Offense Characteristic**

The U.S.P.O. correctly calculated that Young's Base Offense Level is 7. *See* 18 U.S.C. § 113(a)(4); U.S.S.G. § 2A2.3(a)(1) (setting the Base Offense Level at 7 "if the offense involved physical contact"). The U.S.P.O. also correctly applied the Specific Offense Characteristic set forth in U.S.S.G. § 2A2.3(b)(1)(A) (increasing offense level by 2 if the victim sustained bodily injury) and increased Young's offense level to 9.

#### 2. **Acceptance of Responsibility**

The U.S.P.O. correctly reduced Young's offense level by 2 given his timely acceptance of responsibility. *See* U.S.S.G. §§ 3E1.1(a). The downward adjustment to his offense level is warranted because Young pled guilty to the instant offense and timely

notified the authorities of his intention to enter a guilty plea. Young's base offense level should therefore be reduced from 9 to 7.

### 3. Total Offense Level

The United States agrees with the U.S.P.O. that Young's Total Offense Level is 7.

### B. Criminal History Category

The U.S.P.O. correctly determined that Young has a total of 2 criminal history points. Young has been convicted of two misdemeanors in Nebraska – Domestic Assault in the Third Degree (2 points under 4A1.1(b)) and Disturbing the Peace (0 point under 4A1.2(c)(1)). Young is therefore in Criminal History Category II. U.S.S.G. Chapter 5, Part A.

### C. Recommended Sentence

The sentencing guideline range for an offense level of 7 and Criminal History Category II is 2 to 8 months. U.S.S.G. Ch. 5 pt. A. As discussed further in Section IV, *infra*, the United States recommends that the Court sentence Young to 3 months of incarceration with three years of probation to follow and a $25 special assessment.

## III. WITNESSES

At present, the United States does not intend to call any witnesses at the sentencing hearing.

## IV. 18 U.S.C. § 3553(a) SENTENCING FACTORS

The application of the sentencing factors set forth in 18 U.S.C. § 3553(a) supports the imposition of 3 months of incarceration with 3 years of probation to follow and a $25

special assessment. Such sentence is "sufficient, but not greater than necessary" to satisfy Congress' sentencing goals. *See* 18 U.S.C. § 3553(a).

### A. The Nature and Circumstances of the Offense

Not only did Young seriously injure his victim, but his assault was also premeditated in nature. Young did not lash out at the victim in the heat of passion. He waited a full day after his initial conflict with the victim before unleashing a violent attack on him. Had a bystander not intervened, Young would likely have continued his attack. After the attack, Young did not show any remorse. Rather, he blamed the victim for the attack, accusing the victim of threatening and harassing him.

### B. The History and Characteristics of the Defendant

Young was convicted in March 2017 of domestic assault in the third degree, and sentenced to no jail time and 18 months of probation. (*Id.*, ¶ 27.) While on probation, he repeatedly violated the terms of his probation: he committed a new law violation, failed to report to the probation office, used drugs or alcohol, and failed to complete domestic violence classes. (*Id.*) While he received no jail time for his conviction, he was imprisoned for 90 days for his probation violations. (*Id.*)

Defense argues that allotting 2 criminal history points for this assault conviction over-represents the seriousness of Young's criminal history given that the point allotment was based on the time imposed after a probation revocation. (*Id.*, p. 17.) However, the time imposed was likely in recognition of the seriousness of Young's history of repeated violations of the terms of his probation. Moreover, a failure to complete his domestic

violence classes reflects his failure to take responsibility for his domestic violence assault.

    C.    **Basic Aims of Sentencing**

        1.    **Seriousness of the Offense and the Need for a Just Punishment**

Young caused serious physical harm to his victim, who suffered lacerations and a broken orbital bone. This attack was premeditated. To account for the seriousness of Young's offense, jail time should be imposed. The U.S. Probation Office recommends no jail time, a sentence outside of the guideline range, partly on the basis that the attack was "not completely unprovoked." (*Id.,* p. 2.) That the victim may have provoked Young in some way does not excuse Young's response. It is an accepted societal norm for adults to refrain from lashing out physically when provoked. Moreover, a completely unprovoked attack is likely rare. If the standard for imposing jail time is based on whether an attack was provoked, an assault may rarely be punished with jail time.

The government submits that a sentence of 3 months' imprisonment more accurately reflects the serious nature of Young's offense.

        2.    **Afford Adequate Deterrence**

An imposition of jail time will afford better deterrence here. No jail time was imposed for Young's 2017 domestic violence assault. What followed were repeated probation violations and the instant assault. Imposing no jail time yet again sends the message that assaults do not warrant jail time.
U.S. v. Young
3:20-cr-00033-TMB-DMS

### 3. Protect the Public from Further Crimes by the Defendant

Imposing no jail time for his violent act may embolden Young and increase the likelihood of further crimes. Moreover, even assuming that Young's assault was not completely unprovoked, society will become a more dangerous place if courts condone the act of lashing out physically in response to provocation. From the standpoint of public safety, therefore, jail time should be imposed on Young.

### 4. Provide the Defendant with Needed Educational or Vocational Training, and Other Care as Needed

Young appears to have been homeless for a significant portion of his adult life, and to have held a series of short-term employment. (*Id.*, ¶¶ 35, 41-49.) A 3-year probationary period, during which he could reside at a transitional living program for up to 6 months and receive vocational and educational training (*Id.*, p. 3), will assist Young in his adjustment to society.

### D. Kinds of Sentences Available and Sentencing Range

The advisory sentencing range for this crime is between 2 to 8 months. A sentence of 3 months' imprisonment is at the lower end of the sentencing guideline range and is sufficient but not greater than necessary to address the sentencing criteria given the nature of this offense and Young's criminal history.

### E. Need for Restitution

The victim does not seek restitution.

## V. CONCLUSION

Based on the sentencing factors in 18 U.S.C. § 3553(a), and as those factors are

embraced through the sentencing guidelines, a sentence of 3 months of imprisonment and

3 years on probation will best meet the ends of justice in this case.

RESPECTFULLY SUBMITTED October 13, 2020, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/ *Yunah Chung*
YUNAH CHUNG
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2020,
a true and correct copy of the foregoing
was served electronically on the following:

Burke Wonnell

s/ *Yunah Chung*
Office of the U.S. Attorney